# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4877-16T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

R.B.,

     Defendant-Appellant,

and

A.S., SR.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF N.B., a Minor.

_____

Submitted October 4, 2018 – Decided October 17, 2018

Before Judges O'Connor and Whipple.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-0132-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Arthur D. Malkin, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Jessica M. Steinglass, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Todd S. Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendant R.B. (mother) appeals from a June 28, 2017 judgment terminating her parental rights to her son, Nevin[1], presently three years of age. Defendant A.S. (father) is Nevin's biological father; his parental rights to Nevin were also terminated but A.S. has not appealed from this judgment.[2] On appeal, the mother contends the Division of Child Protection and Permanency (Division) failed to prove by clear and convincing evidence the four-prong standard set forth in N.J.S.A. 30:4C-15.1(a).[3]

---

[1]  The child's name is fictitious in order to protect his identity.

[2]  In addition, the mother has a biological child with another, D.J.; that child has been in D.J.'s custody since 2012.

[3]  These four prongs are:

After reviewing the record and the applicable legal principles, we reject the arguments the mother advances and affirm substantially for the reasons expressed by Judge Lourdes I. Santiago in her comprehensive written opinion. In lieu of reciting at length the evidence presented by the Division and Nevin's law guardian in support of terminating the mother's parental rights, we incorporate by reference Judge Santiago's factual findings because they are

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a).]

supported by competent evidence presented at trial.  See  N.J. Div. of Youth &

Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012).  However, we highlight

some of the key evidence.

Defendants are the biological parents of four other children, all of whom

are older than Nevin.  In 2013, their parental rights to these four children were

involuntarily terminated following a trial.  The facts underlying the trial judge's

decision to terminate defendants' parental rights to those four older children are

set forth at length in our opinion affirming the judge's decision, see N.J. Div. of

Child Prot. & Permanency v. R.B., No. A-2762-12 (App. Div. June 26, 2015)

and need not be repeated here.  However, to put the present matter in context,

we note the reason why the judge in the previous matter found the Division had

proved the first factor of N.J.S.A. 30:4C-15.1(a) by clear and convincing

evidence.

In 2011, the mother forcibly dropped one of the children, L.S., into a car

seat when she was five weeks old.  The impact caused the baby to sustain a head

injury.  Despite the fact the baby exhibited significant distress for the ensuing

four days, defendants failed to seek medical attention.  By the time the baby was

seen by a doctor four days after the injury, L.S. had suffered irreversible brain

damage and is now in a permanent vegetative state.  Had defendants obtained

prompt medical treatment, it is likely the baby would have recovered without sustaining any serious permanent injuries.

Given what happened to L.S. while in defendants' care, when Nevin was born, the Division conducted an emergency removal and, upon his discharge from the hospital, placed Nevin in a resource home. The mother has never had physical custody of Nevin. Because of concerns about the mother's mental health, two days after the baby's discharge, the court ordered the mother to obtain mental health treatment, which she commenced approximately two weeks later. In addition to referring the mother to a therapist, the Division arranged for the mother to participate in parenting classes and provided to her both supervised visitation and supervised therapeutic visitation with Nevin.

The mother completed parenting classes and participated in visitation. She also engaged in individual therapy, but ceased for a number of months when Medicaid stopped paying for her sessions. Although it was up to the mother to address the suspension of these benefits, she failed to take any action for three months, even though the Division offered to help her resolve this problem soon after her benefits ceased.

During the guardianship trial, the Division called psychologist Frank Dyer, Ph.D., as its expert witness. Dyer had evaluated the mother in 2012 in

connection with the litigation pertaining to her four older children. At that time, Dyer found that various psychological deficiencies precluded the mother from adequately parenting her children. Dyer evaluated the mother again in 2015 and 2016 and determined she still lacked the capacity to care for her children because of, among other things, serious problems with depression and anxiety.

Dyer did find the mother had made some progress insofar as "organizing her own life." For example, she obtained a job and a place to live. However, she had not engaged in "any real therapeutic work with respect to the core psychological issues that create a risk to any children in her care," and continued to be ill-equipped for the tasks of parenting. He noted "the fact that in her present therapy [the mother] still offers two different stories of how her daughter [L.S.] came to suffer severe injuries suggests that the fundamental problems leading to that incident have not been touched."

Dyer also conducted a bonding evaluation of the mother and Nevin, as well as of the resource parents and Nevin. Dyer recognized the mother interacted appropriately with Nevin during the bonding evaluation and that Nevin had formed some degree of attachment to her as a result of visitation. Nevertheless, Dyer opined Nevin's primary attachment figures were his resource parents. Dyer also testified Nevin's resource parents wish to adopt him.

A-4877-16T1

Dyer pointed out that, given Nevin's stage of development, an attachment figure is critically important. Nevin perceives his resource parents as his "central attachment figures, his central parental love objects and identification figures." If taken from them, Nevin would be "very highly likely" to suffer a traumatic loss, and the mother would not be able to mitigate such loss.

Through his law guardian, Nevin called psychologist Alice Nadelman, Ph.D., who also evaluated the mother. In Nadelman's opinion, the mother does not possess the psychological resources necessary to enable her to provide safe and adequate parental care for Nevin. Nadelman found that although the mother had participated in individual therapy, she had failed to confront key emotional problems because she did not want to open "wounds from the past." Further, Nadelman reported the mother does not believe she needs therapy and will likely discontinue therapy if Nevin were placed with her. Nadelman also observed the mother failed to provide a clear plan for Nevin's care if unified with her, "significantly minimized the impact" losing "his lifelong caregivers" would have upon him, and had no plan for how she would cope with his "grief, rage, and regression" if removed from his resource parents' home.

A-4877-16T1

The trial court found Dyer and Nadelman credible. The mother did not introduce any evidence to refute these experts' opinions; in fact, the mother did not introduce any evidence at all.

Following trial, the judge issued a thorough, forty-seven page opinion in which she addressed the four factors in N.J.S.A. 30:4C-15.1(a), setting forth her findings of fact and conclusions of law as to each. The mother contends there is insufficient evidence to support the judge's conclusion the Division met all four prongs in this statute by clear and convincing evidence.

In reviewing a case in which the termination of parental rights has been ordered, we remain mindful of the gravity and importance of our review. See N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 151 (2010) ("[T]he process for terminating parental rights is a difficult and intentionally rigorous one that must be satisfied by a heightened burden of proof . . . ."). Parents have a constitutionally protected right to enjoy a relationship with their children and to raise them without State interference. N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 102 (2008).

However, this right is not absolute, as it is limited by the "State's parens patriae responsibility to protect children whose vulnerable lives or psychological well-being may have been harmed or may be seriously

endangered by a neglectful or abusive parent." F.M., 211 N.J. at 447. The State has a strong public policy that favors placing children in a permanent, safe, and stable home. See generally In re Guardianship of K.H.O., 161 N.J. 337, 357-58 (1999).

In addition, a reviewing court should not disturb the factual findings of the trial court if they are supported by "adequate, substantial and credible evidence." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). We defer to the trial court's credibility findings and, in particular, its fact findings because of its expertise in family matters, see N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010), unless the trial court's findings are "so wide of the mark that the judge was clearly mistaken." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (citing J.T., 269 N.J. Super. at 188-89).

We note providing proof a parent has in fact harmed a child is not essential to showing the first prong of N.J.S.A. 30:4C-15.1(a) has been satisfied. See N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 604-05 (1986). When no actual harm is proven, the first prong will be satisfied by evidence showing a parent will endanger the child's health, safety, or welfare. See In re

9

Guardianship of D.M.H., 161 N.J. 365, 383 (1999). A court does not have to wait until a child is "irreparably impaired by parental inattention or neglect" before it acts. Id. (citing A.W., 103 N.J. at 616 n.14).

We have examined the mother's arguments the Division failed to satisfy the four prongs of N.J.S.A. 30:4C-15.1(a). After perusing the record, we conclude these arguments are without sufficient merit to warrant discussion in a written opinion, see Rule 2:11-3(e)(1)(E). The judge's thorough opinion analyzes these prongs, and her findings are amply supported by substantial and credible evidence, mandating our deference. N.J. Div. of Youth & Family Servs. v. F.J., 211 N.J. 420, 448-49 (2012); Cesare v. Cesare, 154 N.J. 394, 413 (1998).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4877-16T1